[Cite as *State v. Carrisales*, 2018-Ohio-520.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                    Court of Appeals No. OT-17-007

    Appellee                              Trial Court No. 16 CR 070

v.

Jordan Carrisales                         **DECISION AND JUDGMENT**

    Appellant                             Decided:  February 9, 2018

* * * * *

James J. VanEerten, Ottawa County Prosecuting Attorney, and
Barbara Gallé Rivas, Assistant Prosecuting Attorney, for appellee.

Loretta A. Riddle, for appellant.

* * * * *

**JENSEN, J.**

{¶ 1} Appellant, Jordan Carrisales, appeals the February 10, 2017 judgment of the

Ottawa County Court of Common Pleas sentencing him to 17 months in prison.  For the

following reasons, we affirm.

## I. Background

{¶ 2} On July 12, 2016, Carrisales was charged with one count of sexual battery in violation of R.C. 2907.03(A)(2), a third-degree felony. On October 13, 2016, Carrisales pleaded guilty to the amended count of gross sexual imposition in violation of R.C. 2907.05(A)(5), a fourth-degree felony.

{¶ 3} During the plea hearing, the court explained the consequences of Carrisales's plea of guilty to the gross sexual imposition charge. It addressed the maximum prison term and fine; the mandatory three-year term of postrelease control that would be imposed if he served a prison term and penalties for violating postrelease control; and Carrisales's Tier I sex offender status and registration requirements. Carrisales responded affirmatively each time the judge asked him if he understood a term of his guilty plea.

{¶ 4} While reviewing the plea agreement, the court asked Carrisales if he had read the plea agreement and understood what it said. Carrisales said that he did. When the court addressed Carrisales's understanding of the gross sexual imposition charge, the following exchange occurred:

> [Court:] What is it you are intending to plead guilty to today?
>
> [Carrisales:] F-4 gross sexual imposition.
>
> [Court:] Do you understand what the State would need to prove to show that you are guilty of the offense?
>
> [Carrisales:] No, sir.

2.

[Court:] Okay. Do you know what you are alleged to have done?

[Carrisales:] Yeah.

[Court:] [Defense counsel], have you had the opportunity to explain to Jordan what this offense is?

[Defense Counsel:] Yes. Prior to today, I visited Jordan. We went over obviously the offense. It was a sexual battery. We went over what the offense—what the elements of the offense were that the State would need to prove, so we would waive reading of that at this time.

{¶ 5} The court went on to explain that Carrisales was giving up his right to a trial by jury, right to confront witnesses, right to compulsory process, and right against self-incrimination by pleading guilty. The court explained each right before asking Carrisales if he understood the rights he was giving up. Carrisales replied "yes" to each question.

{¶ 6} Finally, the court asked Carrisales about the facts of the offense:

[Court:] So tell me what happened.

[Carrisales:] I was found guilty—

[Court:] —What did you do?

[Carrisales:] Well, I woke up and saw her and the dude that was with me having sex, and then I ended up having sex with her, too, and I knew she was under the influence.

[Court:] She was under the influence?

[Defense counsel:] And she was a minor.

3.

[Court:]  And a minor.  How old?

[Defense counsel:]  17.

[Carrisales:]  17.

[Court:]  Is that right?

[Carrisales:]  Yes, sir.

The court did not elicit any information about the circumstances of the offense from the state.

{¶ 7} At the conclusion of the hearing, the court found that Carrisales knowingly, intelligently, and voluntarily entered a guilty plea, accepted Carrisales's plea, and set a sentencing hearing.

{¶ 8} On December 12, 2016, the parties appeared for the scheduled sentencing hearing.  Counsel explained to the court that some of the information in the plea agreement was incorrect, so the court had incorrectly informed Carrisales about the consequences of his plea.  The parties submitted an amended plea agreement that Carrisales signed.  The court reviewed the amended maximum fine ($5,000) and the correct term of postrelease control (a mandatory five years) with Carrisales.  Carrisales confirmed to the court that he understood the amended terms and still wanted to plead guilty.  The court accepted Carrisales's guilty plea based on the amended plea agreement. The parties agreed to reschedule the sentencing.

4.

**{¶ 9}** The trial court held Carrisales's sentencing hearing on February 10, 2017. At the hearing, the trial court first reviewed with Carrisales the terms of his Tier I sex offender classification, including the registration requirements and residential restrictions.

**{¶ 10}** Next, the state addressed the court. The prosecutor noted that Carrisales had very little prior criminal history; that, although Carrisales, the victim, and others were drinking on the night of the offense, intoxication did not eliminate Carrisales's culpability for a "violent and predatory" offense; and that Carrisales was given the benefit of pleading guilty to a reduced charge.

**{¶ 11}** Carrisales's attorney then addressed the court. He said that Carrisales took responsibility for his actions on the night of the offense and was aware that his behavior was wrong; he recognized that he could not take advantage of intoxicated, sleeping women. Counsel asked the court to place Carrisales on community control.

**{¶ 12}** Following his attorney's statement, Carrisales briefly addressed the court. He said that he understood and acknowledged his mistakes, accepted full responsibility for his actions, apologized for his behavior, and asked the court to "help me find the proper treatment needed to better myself."

**{¶ 13}** After hearing from counsel and Carrisales, the court reviewed the record. The judge noted that Carrisales had committed a serious offense that was reduced to a fourth-degree felony. He also noted that Carrisales was initially dishonest with the police officers who investigated the case. He said that the assessments Carrisales completed prior to sentencing showed that Carrisales needed treatment.

5.

{¶ 14} The court stated that it considered the principles and purposes of sentencing under R.C. 2929.11, the seriousness and recidivism factors under R.C. 2929.12, and the felony sentencing guidance factors under R.C. 2929.13. The court found that the factors in R.C. 2929.12 showing that Carrisales was more likely to reoffend outweighed those showing that he was less likely to reoffend. Thereafter, the court sentenced Carrisales to 17 months in prison.

{¶ 15} Carrisales now appeals the trial court's decision, raising three assignments of error:

> ASSIGNMENT OF ERROR NO. I. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT ACCEPTED DEFENDANT'S PLEA, FOUND DEFENDANT GUILTY AND SENTENCED DEFENDANT TO GROSS SEXUAL IMPOSITION IN VIOLAITON [sic] OF R.C. 2907.05(A)(5) WHEN DEFENDANT'S RECITATION OF THE ACTS HE COMMITTED DID NOT MEET THE ELEMENTS OF GROSS SEXUAL IMPOSITION.

> ASSIGNMENT OF ERROR NO. II. THE TRIAL COURT COMMITTED PREJUDICIAL AND PLAIN ERROR BY FAILING TO EINSURE [sic] THAT APPELLANT ENTERED INTO A PLEA "WITH UNDERSTANDING OF THE NATURE OF THE CHARGE".

> ASSIGNMENT OF ERROR NO. III. THE TRIAL COURT'S IMPOSITION OF NEARLY THE MAXIMUM SENTENCE IS

6.

CONTRARY TO LAW AND NOT SUPPORTED BY THE RECORD. HENCE IT VIOLATED MR. CARRISALES' RIGHTS UNDER R.C. 2929.14(C) AND 2929.19, AND UNDER THE DUE PROCESS CLAUSES OF THE OHIO AND UNITED STATES CONSTITUTIONS.

**Law and Analysis**

**A. Carrisales was not Required to Admit to Facts Supporting the Charge**

{¶ 16} In his first assignment of error, Carrisales argues that the trial court committed plain error when it accepted his plea without a factual basis to support a charge of gross sexual imposition. The state counters that this failure did not affect Carrisales's understanding of the nature of the charge against him.

{¶ 17} "'A plea of guilty, from an early period in the history of criminal procedure, * * * has been regarded as an admission of every material fact well pleaded in the indictment, *dispensing with the necessity of proving them, and authorizing the court to proceed to judgment*.'" *State v. Blevins*, 6th Dist. Ottawa No. OT-16-013, 2016-Ohio-8382, ¶ 18, quoting *Craig v. State*, 49 Ohio St. 415, 418, 30 N.E. 1120 (1892). (Emphasis sic.) Moreover, Crim.R. 11 does not require that a factual basis for a guilty plea be placed on the record. *Id.*, citing *State v. Post*, 32 Ohio St.3d 380, 387, 513 N.E.2d 754 (1987).

{¶ 18} Despite Carrisales's belief to the contrary, the record need not contain a factual basis for the charge to which he pleaded guilty; his choice to enter a guilty plea is a complete admission of his guilt and "dispenses with the necessity of" the state having to

7.

prove every element of the offense. Therefore, we find that the trial court did not err by accepting Carrisales's guilty plea without putting a factual basis for the plea on the record. Carrisales's first assignment of error is not well-taken.

### B. Carrisales Understood the Nature of the Charge Against Him

{¶ 19} In his second assignment of error, Carrisales claims that his guilty plea is invalid because he entered it without an understanding of the nature of the charge against him. The state contends that Carrisales understood the charge against him and, even if he did not, he has not demonstrated that he was prejudiced by the trial court accepting his plea.

{¶ 20} Under both the United States and Ohio Constitutions, a guilty plea must be made knowingly, intelligently, and voluntarily to be valid. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). Therefore, before accepting a defendant's guilty plea, the trial court must address the defendant personally to inform him that he waives certain constitutional rights by pleading guilty and to determine that he understands the nature of the charges against him, the maximum penalty he is facing, and the effects of his plea. *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 41; Crim.R. 11(C)(2). The underlying purpose of Crim.R. 11(C) is to ensure that the information a defendant needs to make a voluntary and intelligent decision about pleading guilty is conveyed to him. *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981).

8.

{¶ 21} There are two levels of compliance with Crim.R. 11(C): strict and substantial. The court must strictly comply with the rule when explaining the defendant's constitutional rights or the plea is invalid under the presumption that it was not knowingly and voluntarily entered. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31; *State v. Rinehart*, 6th Dist. Wood No. WD-11-030, 2013-Ohio-3372, ¶ 17.

{¶ 22} For non-constitutional rights, on the other hand, substantial compliance is sufficient. *Clark* at ¶ 31; *Rinehart* at ¶ 18; *State v. Ragusa*, 6th Dist. Lucas No. L-15-1244, 2016-Ohio-3373, ¶ 4. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

{¶ 23} Under Crim.R. 11(C), the trial court is required to determine whether the defendant is entering a voluntary plea in light of an understanding of the key facts; the rule does not require that the court personally notify the defendant of these facts. *State v. Acosta*, 6th Dist. Wood No. WD-15-066, 2016-Ohio-5698, ¶ 10. Compliance with the rule generally does not require the trial court to recite each element of the charges against the defendant. *State v. Gallant*, 6th Dist. Erie No. E-12-033, 2013-Ohio-3953, ¶ 9, citing *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 57.

{¶ 24} Here, the transcript of the plea hearing establishes that the trial court engaged in a full and complete colloquy with Carrisales concerning his plea, as required

9.

by Crim.R. 11(C). The trial court strictly complied with Crim.R. 11(C)(2)(c) by providing explanations of each of the constitutional rights Carrisales waived by entering a plea, and Carrisales unequivocally indicated that he understood each right and understood that he was waiving those rights by pleading guilty.

{¶ 25} The trial court also substantially complied with Crim.R. 11(C)(2)(a) and (b). The court ensured that Carrisales knew the degree of the offense, the maximum penalty and fine for the offense, the sex offender classification attached to the offense, and the consequences of being classified as a sex offender. Additionally, Carrisales signed plea papers that contained the statement "I understand the nature of these charges and the possible defenses I might have," and he told the trial court that he understood the plea papers. Although Carrisales said that he did not know the elements of gross sexual imposition (and the trial court did not tell him the elements of gross sexual imposition), Carrisales knew the conduct he was accused of, defense counsel indicated that he had discussed the charge and its elements with Carrisales prior to the plea hearing, and counsel expressly told the court that Carrisales waived reading of the elements of gross sexual imposition. This is sufficient to show that, under the totality of the circumstances, Carrisales understood the implications of pleading guilty to a charge of gross sexual imposition.

{¶ 26} The record demonstrates that the trial court complied with the requirements of Crim.R. 11(C)(2) and that, based on the totality of the circumstances, Carrisales understood the implications of his plea and the rights he waived. We find, therefore, that

10.

Carrisales's plea of guilty was made voluntarily, knowingly, and intelligently. Accordingly, Carrisales's second assignment of error is not well-taken.

## C. Carrisales's Sentence is not Contrary to Law

{¶ 27} Carrisales's third assignment of error asserts that his sentence is contrary to law. He claims that the trial court erred by sentencing him to "nearly the maximum sentence." The state counters that Carrisales was not sentenced to the maximum sentence for fourth-degree gross sexual imposition, so Carrisales's arguments are inapplicable to his sentence.

{¶ 28} We review sentencing challenges under R.C. 2953.08(G)(2). The statute allows an appellate court to increase, reduce, or otherwise modify a sentence or vacate the sentence and remand the matter for resentencing only if it clearly and convincingly finds either of the following:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

> (b) That the sentence is otherwise contrary to law. R.C. 2953.08(G)(2).

An appellate court may not review a trial court's sentence for an abuse of discretion. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 10.

11.

**{¶ 29}** As we recognized in *State v. Tammerine*, 6th Dist. Lucas No. L-13-1081, 2014-Ohio-425, ¶ 16, we still use *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, in determining whether a sentence is clearly and convincingly contrary to law. In *Kalish*, the Supreme Court of Ohio held that a sentence is not clearly and convincingly contrary to law where the trial court has considered the purposes and principles of sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12, properly applied postrelease control, and imposed a sentence within the statutory range. *Kalish* at ¶ 18.

**{¶ 30}** Despite Carrisales's claim that his sentence is contrary to law, the substance of his argument is that the trial court abused its discretion by imposing a "near maximum" sentence. We cannot consider whether a sentence term is an abuse of the trial court's discretion. *Marcum* at ¶ 10.

**{¶ 31}** When we consider Carrisales's sentence under R.C. 2953.08(G)(2), his argument that his sentence is contrary to law fails. Carrisales does not argue that the trial court failed to consider the purposes and principles of sentencing under R.C. 2929.11, the seriousness and recidivism factors under R.C. 2929.12, or the sentencing guidance factors under R.C. 2929.13; improperly applied postrelease control; imposed a sentence outside the statutory range; or made unsupported findings under any of the statutory sections listed in R.C. 2953.08(G)(2)(a).

**{¶ 32}** On the contrary, the record shows that the trial court stated at the sentencing hearing and in its judgment entry of conviction and sentence that it considered

12.

the principles and purposes of sentencing, the seriousness and recidivism factors, and the sentencing guidance factors. It specifically found that the more-likely-to-reoffend factors outweighed the less-likely-to-reoffend factors. It also informed Carrisales about the terms and conditions of the mandatory five years of postrelease control he will be subject to when he is released from prison. The 17-month sentence is within the range for fourth-degree felonies. R.C. 2929.14(A)(4) (the range of sentences that a trial court may impose for a fourth-degree felony is "six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months.").

{¶ 33} The record shows that the trial court complied with all applicable sentencing statutes when it sentenced Carrisales to prison. We therefore find that Carrisales's sentence is not clearly and convincingly contrary to law under R.C. 2953.08(G)(2). Accordingly, Carrisales's third assignment of error is not well-taken.

### III. Conclusion

{¶ 34} Based on the foregoing, the February 10, 2017 judgment of the Ottawa County Court of Common Pleas is affirmed. Carrisales is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                              _____

                                                      JUDGE

Arlene Singer, J.

                                                  _____

James D. Jensen, J.                                      JUDGE
CONCUR.

                                                  _____

                                                      JUDGE